# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. **1:22-MJ-00132**
835 Heatherstone Drive, )
Cincinnati, Ohio 45240 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

835 Heatherstone Drive, Cincinnati, Ohio 45240, more particularly described in Attachment A.

located in the **Southern** District of **Ohio**, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) | Bank Robbery |

The application is based on these facts:
See attached affidavit of Special Agent Bradley N. Harvey

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Bradley N. Harvey, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Mar 8, 2022**

*Judge's signature*

City and state: Cincinnati, Ohio

Stephanie K. Bowman United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A
*Property to be searched*

The property to be searched is **835 Heatherstone Drive, Cincinnati, Ohio 45240,** further described as a single-family dwelling, with brick and white panel siding and a covered front porch. The address numbers are affixed to the side of the residence directly above the garage door. The main entry point faces Heatherstone Drive and is accessible via a sidewalk leading from the front porch to the driveway which leads to Heatherstone Drive. The front entrance is located off of the front porch and consists of a red in color front door with an oval window affixed to the upper half of the door. There is a large window to the right of the main entry point. To the far left of the main entry point are two smaller windows set into the brick siding. Below each of the windows is white siding. A small black mailbox is affixed to the residence, to the left of the main entry point. There is a driveway to the right of the residence that leads to a single car garage which is attached to the main residence. The garage is flanked on each side by brick columns that rise from the driveway to eaves above the garage. Included in the property to be searched are any outbuildings, locked safes, or vehicles located on the curtilage.

 

10

## ATTACHMENT B
*Property to be seized*

The items to be seized are evidence of violations of Title 18, United States Code, Section 2113 specifically:

1. Clothing and tools used in the planning and commission of the bank robberies;

2. U.S. currency;

3. Bank documents;

4. Books, records, receipts, computer storage media, electronic information storage devices, bank statements and records, wire transfer records, money drafts, letters of credit, money order and cashier's check receipts, passbooks, bank checks, accounting of expenditures made and payments received, safe deposit box keys and records, money wrappers, rubber bands, money containers, safes, financial records, and notes showing payments, receipt, concealment, transfer, or movement of assets generated from the bank robberies;

5. Cellular telephones, telephone bills, including cellular telephone and beeper bills, telephone message records, telephone electronic storage devices, personal notes, photographs, calendars, diaries, and other items reflecting names, addresses, telephone numbers, communications, and activities associated with the planning and execution of bank robberies.

6. Financial instruments purchased with large amounts of currency derived from bank robberies, including traveler's checks, bonds, stock certificates, cashier's checks, money orders, and certificates of deposit; money counting machines;

money wrappers, boxes, bags, briefcases, suitcases, or containers used to carry currency;

7. Records, documents, and deeds reflecting the purchase or lease of real estate, any vehicles, or other items, obtained with the proceeds of bank robberies;

8. Records, items, and documents reflecting travel for the purpose of participating in bank robbery, credit card receipts, travel vouchers, hotel, and restaurant receipts, canceled checks, maps and written directions to locations;

9. Photographs and electronic images, such as video recordings and tape recordings which document the association with other co-conspirators;

10. Firearms, firearms magazines and attachments, and ammunition;

11. Items associated with the bank robberies to include clothing, tools, planning materials, U.S currency, bank documents, notes, photographs, and videos; and

12. Indicia of ownership and control over the premises, including, but not limited to, mail, leases, deeds, photographs of occupants.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CINCINNATI

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR SEARCH WARRANTS**

I, Bradley Harvey, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so since March 2019. I am a "federal law enforcement officer" within the meaning of 18 U.S.C. § 2510(7) empowered to investigate violations of federal law, including bank robbery in violation of 18 U.S.C. § 2113, and to apply for and execute warrants issued under the authority of the United States.

2. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed since March 2019. I have been employed as a law enforcement officer for over nine years. I have conducted multiple violent crime, bank robbery, and drug investigations and I have authored multiple search warrants for physical locations. I received training in violent crime investigations. I have interviewed individuals involved in violent crimes, and I am familiar with the methods used by perpetrators of violent crimes and bank robberies to conceal their identities from law enforcement and witnesses.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. 2113 have been committed by Christopher TAYLOR. There is also probable cause to search the subject premises (more particularly described

in Attachment A), for the items listed in Attachment B, which constitute evidence of a crime, fruits of crime, and property designed/intended/used in committing a crime, concerning violations of 18 U.S.C. § 2113(a).

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## **PROBABLE CAUSE**

5. On February 2, 2022, officers with the Fort Wright Police Department (FWPD) responded to the Guardian Savings Bank, located at 10 Kyles Lane, Fort Wright, Kentucky, for a robbery. At approximately 0904 hours, an unknown white male subject entered the bank and demanded cash from the teller via a note. After receiving cash, the subject then left the bank on foot and traveled northbound on Dixie Highway.

6. The subject entered the bank through the front door, shortly after the staff unlocked the doors for the start of the business day. He walked to the front counter and passed a note to the teller that read: "This is a robbery, give me all your cash, don't say anything, no dye packs." The teller then handed the subject $232, $50 of which was documented "bait" money. The subject then exited via the front door – at approximately 0905 hours – and appeared to travel northbound through the bank parking lot that is parallel to Dixie Highway.

7. Witnesses described the subject as an older white male, 6'0–6'2 tall, in his 50's or 60's, with grey hair. The subject was wearing thin-frame eyeglasses, a black jacket, black shoes, black pants, black gloves, a grey toboggan hat, and a blue face mask.

8. FWPD officers obtained the bank security video from the Guardian Savings Bank for the date and time of the incident. The subject can clearly be seen in the video entering the bank through the front door wearing a wig with long, dark hair, thin-frame eyeglasses, a black jacket, black shoes, black pants, black gloves, a grey toboggan hat, and a blue face mask. In the video, the subject can be seen approaching the teller desk where he showed the teller what appeared to be a note. The teller can then be seen giving the subject what appears to be U.S. currency. The subject then leaves the bank through the front doors and appears to turn right.

9. FWPD officers canvassed the businesses surrounding the bank for witnesses and surveillance video. At the BP gas station located at 150 Dixie Highway, Fort Wright, Kentucky, officers obtained surveillance video that showed the subject leaving the bank and walking northbound through the front parking lot of the bank. He then appeared to enter the parking lot located at 1717 Dixie Highway, Fort Wright, Kentucky, where he was no longer visible.

10. On February 9, 2022, La Grange Police Department (LPD) officers responded to the Truist Bank, located at 2024 KY-53, La Grange, Kentucky 40031, for a robbery. At approximately 0905 hours, an unknown white male subject entered the Truist Bank and demanded cash from the teller via a note. After receiving cash from the bank, the subject then left the bank and turned right, traveling on foot.

11. Witnesses described the subject as a white male, approximately 60 years old, with a tall and thin build; he was wearing a wig with dark hair, gloves, and a camouflage jacket.

12. The subject entered the bank through the front door at approximately 0905 hours, approximately 5 minutes after the bank opened. He then approached one of the tellers, who had not opened his/her drawer yet and directed the subject to a second teller. The subject then handed the second teller a note. According to the teller's recollection the note stated, "This is a robbery, I want all the money in the top drawer. Cooperate and no one gets hurt." Upon seeing the note, the teller gave the subject $3453 in U.S. currency. After receiving the currency, the subject retrieved the note and exited the front door of the bank and turned right on the sidewalk. Watching through the front window, bank employees observed the subject walk across Market Street and then lost sight of him near the car wash located at 1215 Market Street, La Grange, Kentucky 40031.

13. Shortly after the robbery, two Kroger employees approached bank employees with $207 in U.S. currency they had found in the area of the bank. They stated that a man wearing a camouflage jacket had dropped the money on the bank sidewalk and parking lot.

14. LPD officers canvassed the area to locate surveillance video, as well as witnesses. At the Applebee's restaurant, located at 1205 Market Street, La Grange, Kentucky 40031, LPD officers interviewed two employees. Employee 1 stated that at approximately 0850 hours on the date of the incident, she observed a man sitting in a silver car behind the restaurant. Employee 1 could only see the subject sitting in the

driver's seat. Employee 2 stated that at approximately 0855 hours on the date of the incident, he observed a suspicious vehicle in the parking lot of the Applebee's. He described the vehicle as a silver Honda sedan that was parked in the rear of restaurant facing Gustavos. According to Employee 2, a man with black hair and wearing a camouflage jacket exited the vehicle and put a mask and gloves on; the subject then placed a plastic grocery bag over the vehicle's license plate. Employee 2 then observed the man walk toward the car wash between Applebee's and Truist Bank.

15. Investigators observed surveillance videos from the Truist Bank robbery. In the video, the subject was observed wearing what appears to be a wig with shoulder length black hair. The subject was also wearing eyeglasses, gloves, a camouflage jacket, and a hat. In the video, investigators were able to see the subject walk up to the second teller and present him/her with what appears to be a note; the teller can then be observed gathering U.S. currency and handing it to the subject. After receiving the cash, the subject left the bank and turned right out of the door, in the direction of the car wash and Applebee's restaurant.

16. After observing surveillance videos from both incidents, investigators determined that the same subject likely committed both robberies. Both subjects have similar physical descriptions: tall, slim, white male, in his 50's or 60's. Both subjects can be seen wearing wigs with long, black hair and similar eyeglasses. The subjects in both incidents have a similar gait and posture (hunched shoulders). Additionally, both robberies occurred on the same day of the week (Wednesday), at the same time of day (shortly after the banks opened for business). Both banks were located close to a major

highway, which facilitated an easy route of escape. On both occasions, the subject demonstrated a high level of awareness and sophistication by parking his vehicle in a location that was not covered by business surveillance cameras and could not be easily observed from the bank. Finally, the notes passed by the subjects had similar wording and both notes were retrieved by the subject once they received the currency.

17. On March 2, 2022, officers with the Oldham County Police Department (OCPD) responded to the Chase Bank located at 6000 Crestwood Station, Unit 17A, Crestwood, Kentucky 40014 for a bank robbery. The teller described the subject as a white male wearing a black jacket, black hat, light colored pants, and glasses. Other witnesses described the subject as a white male wearing a white hoodie and light-colored khakis. The subject entered the bank between 0915 hours and 0920 hours. He approached the teller and indicated that he needed to make a withdrawal; he then handed the teller a note. According to the teller, the note indicated that a robbery was in progress and if she cooperated, no one would get hurt. She then gave the subject $1000.00 in U.S currency. The subject took the money and left the bank, traveling northeast between the Dollar General and the Southeast Christian Church. He then took a left and moved out of sight behind the church.

18. While en route to the bank, responding officers were provided a vehicle description of a silver Honda Accord by La Grange Police Department officers. This description was based on witness statements from the February 9, 2022 Truist Bank robbery in La Grange, Kentucky. OCPD officers observed a silver Honda Accord driven by a white male traveling down Highway 146, away from the scene of the robbery.

Officers initiated a traffic stop on the vehicle and made contact with the driver, CHRISTOPHER TAYLOR. At the time of the stop TAYLOR was wearing a bright yellow hooded sweatshirt, khaki pants, and dark colored tennis shoes; he also had a black jacket. After having TAYLOR exit the vehicle, one of the officers observed black long-haired wig, similar to those used in the Fort Wright and La Grange bank robberies, in the vehicle in plain view. TAYLOR was detained.

19. Detectives with OCPD obtained a state search warrant for the silver 2012 Honda Accord driven by TAYLOR. Upon execution of the search warrant, detectives located a black face mask, glasses, a black baseball cap, clear latex type gloves similar to what was worn at the Crestwood and La Grange bank robbery, $1000.00 in U.S. Currency, and a typed robbery note. Detectives also located a black long-haired wig that matches the wig used in the Fort Wright and La Grange bank robberies.

20. Detectives with OCPD compared the denominations of bills that comprised the $1000.00 in U.S. currency seized from TAYLOR'S vehicle with the reported denominations given to the Chase Bank robbery subject. Based on initial analysis, detectives determined that the denominations matched.

21. A search incident to arrest revealed an Ohio driver's license identifying the subject as CHRISTOPHER RICHARD TAYLOR, date of birth 6/24/1964, residential address 835 Heatherstone Drive, Cincinnati, Ohio 45240; the license was located in the TAYLOR'S wallet.

22. In a post arrest interview TAYLOR confirmed that his current residential address is 835 Heatherstone Drive, Cincinnati, Ohio, and that he lived at the residence alone.

23. Analysis of the three bank robberies reveals a similar modus operandi. All robberies occurred shortly after the bank opened. The subject passed a note during all three robberies, which contained very similar statements/language. In all three instances, the subject exited the bank and walked to areas with little or no surveillance video coverage, where investigators believe he parked his car to hide it from observation from the bank. Additionally, the physical description given by witnesses is consistent with TAYLOR'S physical description.

## CONCLUSION

24. I know, based on my training and experience, that subjects involved in serial criminal enterprises will often keep plans, materials, tools, and fruits of the crime at their residence for safekeeping and easy access. While items related to the bank robberies were found on the subject or in the subject's vehicle at the time of his arrest, there are still items of evidentiary value, including U.S currency from the previous bank robberies, that are unaccounted for and, therefore, probable cause exists to believe that such items will be found during the requested search.

25. Based on the aforementioned facts set forth in the affidavit, there is probable cause to believe that TAYLOR committed multiple bank robberies that resulted in a total loss of over $4,400. There is probable cause to believe that searching the subject premises (more particularly described in Attachment A) will uncover the items

listed in Attachment B, which constitute evidence of a crime, fruits of crime, and property designed/intended/used in committing a crime, concerning violations of 18 U.S.C. § 2113(a).

26. I request that the court order all materials in support of this application, including the affidavit and search warrant and the attachments, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize the ongoing investigation.

Respectfully submitted,

_____
Bradley Harvey
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 8th day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A
*Property to be searched*

The property to be searched is **835 Heatherstone Drive, Cincinnati, Ohio 45240,** further described as a single-family dwelling, with brick and white panel siding and a covered front porch. The address numbers are affixed to the side of the residence directly above the garage door. The main entry point faces Heatherstone Drive and is accessible via a sidewalk leading from the front porch to the driveway which leads to Heatherstone Drive. The front entrance is located off of the front porch and consists of a red in color front door with an oval window affixed to the upper half of the door. There is a large window to the right of the main entry point. To the far left of the main entry point are two smaller windows set into the brick siding. Below each of the windows is white siding. A small black mailbox is affixed to the residence, to the left of the main entry point. There is a driveway to the right of the residence that leads to a single car garage which is attached to the main residence. The garage is flanked on each side by brick columns that rise from the driveway to eaves above the garage. Included in the property to be searched are any outbuildings, locked safes, or vehicles located on the curtilage.




## ATTACHMENT B
*Property to be seized*

The items to be seized are evidence of violations of Title 18, United States Code, Section 2113 specifically:

1. Clothing and tools used in the planning and commission of the bank robberies;

2. U.S. currency;

3. Bank documents;

4. Books, records, receipts, computer storage media, electronic information storage devices, bank statements and records, wire transfer records, money drafts, letters of credit, money order and cashier's check receipts, passbooks, bank checks, accounting of expenditures made and payments received, safe deposit box keys and records, money wrappers, rubber bands, money containers, safes, financial records, and notes showing payments, receipt, concealment, transfer, or movement of assets generated from the bank robberies;

5. Cellular telephones, telephone bills, including cellular telephone and beeper bills, telephone message records, telephone electronic storage devices, personal notes, photographs, calendars, diaries, and other items reflecting names, addresses, telephone numbers, communications, and activities associated with the planning and execution of bank robberies.

6. Financial instruments purchased with large amounts of currency derived from bank robberies, including traveler's checks, bonds, stock certificates, cashier's checks, money orders, and certificates of deposit; money counting machines;

money wrappers, boxes, bags, briefcases, suitcases, or containers used to carry currency;

7. Records, documents, and deeds reflecting the purchase or lease of real estate, any vehicles, or other items, obtained with the proceeds of bank robberies;

8. Records, items, and documents reflecting travel for the purpose of participating in bank robbery, credit card receipts, travel vouchers, hotel, and restaurant receipts, canceled checks, maps and written directions to locations;

9. Photographs and electronic images, such as video recordings and tape recordings which document the association with other co-conspirators;

10. Firearms, firearms magazines and attachments, and ammunition;

11. Items associated with the bank robberies to include clothing, tools, planning materials, U.S currency, bank documents, notes, photographs, and videos; and

12. Indicia of ownership and control over the premises, including, but not limited to, mail, leases, deeds, photographs of occupants.